IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BIMBO BAKERIES USA, INC., | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:21-CV-01079-P |
| BAKERY, CONFECTIONERY, TOBACCO WORKERS AND GRAIN MILLERS INTERNATIONAL UNION, LOCAL 111, | § § § § § § | |
| Defendant. | § | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Martha P. Owen
State Bar No. 15369800
mowen@ddollaw.com
DEATS, DURST & OWEN P.L.L.C.
707 WEST 34TH STREET, SUITE 3
AUSTIN, TEXAS 78705
Telephone: (512) 474-6200
Facsimile: (512) 474-7896

Rod Tanner
State Bar No. 19637500
rtanner@rodtannerlaw.com
TANNER AND ASSOCIATES, PC
6300 Ridglea Place, Suite 407
Fort Worth, Texas 76116-5706
Telephone:  (817) 377-8833
Facsimile:   (817) 377-1136

**ATTORNEYS FOR DEFENDANT
BAKERY, CONFECTIONARY, TOBACCO
WORKERS AND GRAIN MILLERS
INTERNATIONAL UNION, LOCAL 111**

1

**TABLE OF CONTENTS**

Table of Authorities………………………………………………………………………3

I. Introduction………………………………………………………………………..4
II. Factual Background……………………………………………………………….5
III. Arguments and Authorities………………………………………………………..8

    A. The liability decision cannot be reviewed because it is not final……………...8
    B. If the Court decides to review the liability decision, it should be
        confirmed……………………………………………………………………11

IV. Attorneys' Fees……………………………………………………………………16

V. Conclusion and Prayer for Relief………………………………………………….17

 Certificate of Service…………………………………………………………………..19

APPENDIX

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Norfolk & Western R. Co.*, 773 F.2d 880 (7th Cir. 1985) ............................................ 9
*Bruce Hardwood Floors v. UBC, S. Council of Indus. Workers, Local Union No. 2713*, 103 F.3d 449 (5th Cir. 1997) ........................................................................................................... 17
*Commc'ns Workers v. Sw. Bell Tel. Co.*, 953 F.3d 822 (5th Cir. 2020) ....................................... 12
*Cont'l Airlines v. Air Line Pilots Ass'n, Int'l*, 555 F.3d 399 (5th Cir. 2009) ............................... 12
*Delek Refin., Ltd. v. Local 202, United Steel*, 891 F.3d 566 (5th Cir. 2018) .......................... 13, 17
*Delta Queen Steamboat Company v. District 2 Marine Engineers Beneficial Association,* 889 F.2d 599 (5th Cir. 1989) .......................................................................................................... 15
*E. Air Lines, Inc. v. Transp. Workers Union, Local 533*, 580 F.2d 169 (5th Cir. 1978) .............. 12
*E. Assoc. Coal Corp. v. Mine Workers*, 531 U.S. 57 (2000) .................................................. 12, 15
*Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1325 (5th Cir. 1994) ...................................... 13
*Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tex. Steel Co.*, 639 F.2d 279 (5th Cir. 1997) ................................................................................................................................. 17
*Local 36, Sheet Metal Workers Int'l Ass'n v. Pevely Sheet Metal Co.*, 951 F.2d 947 (8th Cir. 1992) ........................................................................................................................................... 9
*Manville Forest Prods. Corp. v. United Paperworkers Int'l Union*, 831 F.2d 72 (5th Cir. 1987) 12
*McKinney Restoration Co. v. Ill. Dist. Council No. 1 of Int'l Union of Bricklayers*, 392 F.3d 867 (7th Cir. 2004) ........................................................................................................................... 9
*Millmen Local 550 v. Wells Exterior Trim*, 828 F.2d 1373 (9th Cir. 1987) ............................. 9, 11
*Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013) ...................................................... 12, 15
*Peabody Holding Co. v. United Mine Workers of Am.*, 815 F.3d 154 (4th Cir. 2016) ............. 9, 11
*Quezada v. Bechtel OG & C Const. Servs. Inc.*, 946 F.3d 837 (5th Cir. 2020) ............................ 13
*Teamsters Local No. 5 v. Formosa Plastics Corp.*, 363 F.3d 368 (5th Cir. 2004) ....................... 12
*Union Switch & Signal Div. Am. Standard Inc. v. United Elec., Radio & Mach. Workers of Am., Local 610*, 900 F.2d 608 (3d Cir. 1990) ................................................................... 8, 9, 10, 11
*United Paperworkers Int'l Union v. Misco*, 484 U.S. 29 (1987) ............................................. 8, 12
*United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960) .................................... 12

**Statutes**

29 U.S.C. § 173 ............................................................................................................................... 8

TO THE HONORABLE COURT:

COMES NOW defendant Bakery, Confectionery, Tobacco Workers and Grain Millers International Union, Local 111 ("Local 111" or the "Union") and files this motion for summary judgment under FED. R. CIV. P. 56.[1] Through this motion, Local 111 will show that there is no genuine issue as to any material fact and that Local 111 is entitled to judgment as a matter of law.

## I.  INTRODUCTION

This litigation arose after plaintiff Bimbo Bakeries USA, Inc. ("the Company") received a an adverse ruling from a labor arbitrator in a garden-variety contract interpretation case. The Union filed a grievance under its collective bargaining agreement ("CBA") with the Company over the Company's failure to pay a form of premium pay provided for in the CBA if an employee is assigned a weekly work schedule that does not provide for two consecutive days off. The Company's workweek begins on Sunday and ends on Saturday. Breaking with past practice, the Company began scheduling employees off on Saturdays and Sundays and argued that giving those two days off satisfied the contractual requirement of two consecutive days off, meaning that no premium pay would be due under these circumstances. The Union took the position that since the Company's workweek begins on Sunday and ends on Saturday, the Company would have to schedule the two days off within the given workweek (as it had been doing), such as Sunday/Monday, Monday/Tuesday, and Friday/Saturday, for example, if it wanted to avoid paying the premium pay.  A Saturday/Sunday combination, though, necessarily means that the days off have been split between two workweeks, with the Saturday coming at the end of one week and the Sunday coming at the beginning of the second week. The Arbitrator evaluated the grievance in light of the evidence presented at the arbitration hearing and ruled in favor of the Union on liability.

---

[1] Contemporaneously with the electronic filing of this Motion, Local 111 has mailed to the clerk's office a paper copy of its Motion and Appendix in compliance with Judge Pittman's rules.

Without waiting for the Arbitrator to issue a complete award that dealt with backpay, the Company then instigated this litigation.

## II.     FACTUAL BACKGROUND

1. The Company and the Union are parties to a CBA governing wages, hours and working conditions for employees at the Company's Fort Worth bakery, who are represented by Local 111. *Complaint* ¶7, Dkt. No. 1.[2]

2. There are approximately 232 bargaining unit members working at the Fort Worth bakery. *Decision*, Union Appx. A, at 3.[3]  The facility operates three shifts on a twenty-four hour basis and produces bread, buns and donuts. *Id.*  The production and shipping departments run six days a week and the maintenance and sanitation departments run seven days a week. *Id.*

3. Bargaining unit employees are scheduled to work 40 hours a week on a seven-day workweek schedule. *Id*. The Company posts its work schedules by Friday to set the schedule for the following workweek which starts on Sunday and ends on Saturday. *Id*. This is the same work-week schedule that the Company uses for determining if employees are entitled to overtime for a particular week. *Id. See also* Complaint ¶23.

4. The parties agreed to a form of extra compensation, or premium pay, for employees called an "earned work credit." Article 19 of the CBA requires that an earned work credit ("EWC") is required to be paid to "[a]ny employee who is assigned to work a schedule that does not provide for two (2) consecutive days off." *CBA*, Union. Appx. B, Art. 19.1 at 46-47.  Each earned work credit has a value of $1.00.  Employees receive twelve (12) work credits, or $12.00, for each non-consecutive day work schedule. *Id*. Under Article 19, earned work credits are paid out annually each December. *Id.,* Art. 19.2 at 47.

---

[2] Since the Complaint and Answer are part of the pleadings, they are not included in the Union's Appendix.
[3] Page references are to the sequential pages of the Union's Appendix.

5. Prior to 2019, most employees did not have both Saturday and Sunday as consecutive days off. *Decision*, Union Appx. at 3. *See also Complaint* ¶15. In January 2019, the Company unilaterally implemented a new scheduling regime under which bakery production employees would have the first day of each workweek (Sunday) and the last day of that workweek (Saturday) off. *Complaint*, ¶¶16, 19. The Company made the decision to change the work schedules to provide for weekends off on its own, for its own reasons. *Id.* Even though the new production schedule did not provide for two consecutive days off, the Company refused to pay the EWCs required under Article 19 "for each such non-consecutive day work schedule." *Complaint*, ¶18.

6. Per the CBA, Local 111 timely grieved the Company's refusal to pay the EWC, arguing that the CBA provides for the payment of EWC unless the two consecutive days off occur within the same Sunday through Saturday workweek. *Complaint*, ¶21. Pursuant to the grievance and arbitration provisions in the CBA, the dispute culminated in an arbitration hearing before Arbitrator Michael Z. Green on April 8, 2021. *Id.*

7. The parties agreed to bifurcate the arbitration proceeding into liability and damages phases. *Decision,* Union Appx. at 2, n.2, 13-14. The parties jointly requested that the Arbitrator "address only the question of liability" in the April 8, 2021 hearing. *Id.* The parties agreed that if Local 111's grievances were sustained, the parties would attempt to agree on the remedy, and in case they were unable to reach agreement, "the parties asked the Arbitrator to maintain jurisdiction to clarify the decision and award in this matter to determine the final remedy." *Id.*

8. Arbitrator Green issued his Award on the liability issue on August 11, 2021, sustaining Local 111's grievances, and finding that the Company violated the CBA by refusing to pay the earned work credits required under Article 19. *Decision, Union Appx. A*. The crux of the Arbitrator's ruling was his finding that "if the Company assigns a work schedule for the employee to work for a week and posts that schedule on Friday to start on Sunday and end on Saturday and that schedule does not provide for two consecutive days off, the employee is entitled to earned work credit under Article 19.1.B." *Decision, Union Appx.* at 8.

9. As the parties requested, the Arbitrator retained jurisdiction for 30 days from the date of the liability award, to allow the parties an opportunity to try to reach agreement on the remedy, and to preserve his ability to issue a ruling on remedies if agreement could not be reached. *Decision*, Union Appx. at 13-14. With liability determined, the parties set out to see if agreement could be reached on the remedy. On August 25, 2021, the Company's counsel assured the Union that the "Company is working on determining what it owes for 2019 and 2020" and "will do the initial calculations for the union to review." *Remedy and Jurisdiction Correspondence*, Union Appx. C, at 52-53. *See also Owen Affidavit*, Union Appx. D, at 59-60. When the calculations were not completed by September 10, 2021, the date through which the Arbitrator had retained jurisdiction, the parties sought and obtained Arbitrator Green's agreement to extend his jurisdiction for another 30 days, until October 10. *Id.* at 55, 58.

10. On September 23, 2021, the Company abruptly changed course, hired new lawyers, refused to share its damages calculations or otherwise negotiate on the remedy, and refused to complete the arbitration process by submitting the remedy issue to Arbitrator Green for decision. Instead, while the arbitrator still had jurisdiction, the Company filed this lawsuit asking the Court to set aside the interlocutory liability award on five overlapping grounds:

7

   a.  The Arbitrator evidenced a manifest disregard of the terms of the Agreement and issued an Award totally unsupported by principles of contract construction;

   b.  The Award ignores the plain language of the contract;

   c.  The Award fails to draw its essence from the Agreement;

   d.  The Award is based on an impermissible addition [to] and/or modification of the provisions of the Agreement, in violation thereof; [and]

   e.  The Arbitrator exceeded his power under the law and the parties' Agreement.

*Complaint*, ¶28.

11. Local 111 answered and asserted a counterclaim seeking confirmation of the liability Award and an order requiring Plaintiff to complete the arbitration process with Arbitrator Green. See *Answer*, Dkt. 10. Local 111 now files this motion for summary judgment.

### III. ARGUMENTS AND AUTHORITIES

**A. The liability decision cannot be reviewed because it is not final.**

The Supreme Court, the Fifth Circuit, and other appellate courts have repeatedly endorsed the principle that arbitral decisions should be insulated from judicial review. *United Paperworkers Intern. Union v. Misco, Inc.*, 484 U.S. 29, 37 (1987). As the Supreme Court noted in *Misco*, the Labor Management Relations Act, 29 U.S.C. § 173(d), provides that "[f]inal adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." *Id*. "There is a strong national policy favoring the resolution of disputes by arbitration." *Union Switch & Signal Div. Am. Standard Inc. v. United Elec., Radio & Mach. Workers of Am., Local 610*, 900 F.2d 608, 615 (3d Cir. 1990). "The Supreme Court has repeatedly stressed that arbitration is a particularly appropriate tool for preserving peace in the work

8

place." *Id.* Section 301 of the LMRA "represents a clear Congressional mandate that agreements to arbitrate labor disputes be enforced by the district courts." *Id.* at 616.

While Section 301 also gives a district court the authority to set aside a labor arbitration award in certain extremely narrow circumstances, discussed in more detail in a subsequent section of this brief, a district court may not adjudicate a claim challenging an award until the arbitration proceedings are complete and the award is final. *Union Switch,* 900 F.2d at 610. This doctrine is called the "complete arbitration" rule, and it exists to avoid "fragmented litigation" over arbitration proceedings. *Id.* at 611. Under the complete arbitration rule, an arbitrator's award is only final if it is "intended by the arbitrator to be [a] complete determination of every issue submitted." *Millmen Local 550 v. Wells Exterior Trim*, 828 F.2d 1373, 1376 (9th Cir. 1987) (quoting *Anderson v. Norfolk & Western R. Co.*, 773 F.2d 880, 883 (7th Cir. 1985).

An award is not considered final and binding if it postpones the judgment of a remedy. *Peabody Holding Co. v. United Mine Workers of Am.*, 815 F.3d 154, 160–62 (4th Cir. 2016); *McKinney Restoration Co. v. Ill. Dist. Council No. 1 of Int'l Union of Bricklayers*, 392 F.3d 867, 872 (7th Cir. 2004); *Local 36, Sheet Metal Workers Int'l Ass'n v. Pevely Sheet Metal Co.*, 951 F.2d 947, 949–50 (8th Cir. 1992); *Union Switch*, 900 F.2d at 611; *Millmen Local 550*, 828 F.2d at 1376–77.

In *Union Switch*, as in this case, the arbitrator issued an award that was final with respect to liability, but left open the issue of what remedy should follow and retained jurisdiction to rule on any subsequent remedial disputes. *Id.* at 609. The employer filed suit challenging the arbitrator's liability award, and the union counterclaimed seeking enforcement of the award. *Id.* The district court granted summary judgment for the union. *Id.* at 609–10. The appeals court made clear that the district court **never should have reached the merits**, writing:

> There can be no doubt that the district court committed serious error when it entertained the original cross-applications to vacate or enforce, error that would have required reversal of the court's judgment had there been an appeal. In entertaining the original action, the district court acted contrary to the consistent teachings of this court and, so far as we are aware, every other Court of Appeals that has considered a similar issue.

*Id.* The appeals court explained that because the arbitration award left open the question of remedy, it did not constitute a final and binding award reviewable under Section 301, and the district court therefore should have dismissed the complaint. *Id.* at 611.

The *Union Switch* court noted that the "large number of cases presenting arbitration awards that defer determination of the remedy indicates that this is a common practice among arbitrators" and commented that it is "entirely reasonable for an arbitrator to 'call time out' during an arbitration in the hope that a partial resolution will inspire the parties to work out their remaining differences on their own, thereby avoiding the time and expense of additional arbitration." *Id.* The court explained that the complete arbitration rule ensures "that parties do not use these 'time outs' as an opportunity to rush to court, either to preserve what they have just won, or (more often) to forestall a process that is not turning out as they might have wished." *Id.*[4] If parties were permitted to do so, "the arbitrator's time [would] only be spared, if at all, at the great expense of vastly prolonged and unnecessary litigation, which is of course precisely what arbitration exists to avoid." *Id.* Instead, the arbitration should continue through to a determination of the appropriate relief and only then, if at all, should the dispute be presented in district court. *Id.* That way, the district court is "in a position to resolve *all* of the issues presented by this nexus of operative facts." *Id.*

*Union Switch* clearly establishes that an arbitration award that postpones the determination of a remedy is not final, and that the judicial review of incomplete awards is inappropriate in all

---

[4] The Union submits that this is exactly what is going on with the Company's lawsuit in this case.

10

but the "most extreme" situations, because review at that stage would disrupt and delay the arbitration process and could result in piecemeal litigation. *Id.* (citing *Millmen Local 550*, 828 F.2d at 1375, 1377). That will certainly be the case here. For example, if the Court were to uphold the Arbitrator's decision on liability and remand as to remedy, the Company could/would presumably appeal that decision as well, dragging the Union into court once again, forcing it to engage in costly litigation, and further delaying the relief to which its members are due. This is a waste of the Court's and the Union's resources and time.

These cases support the Union's position in this case that the Arbitrator's decision on liability is not final because it does not address every issue submitted to him under the CBA. Indeed, this lawsuit was filed during a period in which the parties were in the process of determining damages and the Arbitrator had retained jurisdiction to complete the Award at the request of the parties. The fact that the parties requested bifurcation of the arbitration proceedings does not change this analysis. *Peabody Holding Co.*, 815 F.3d at 161 ("That the parties agreed to bifurcate their arbitration proceedings does not change the fact that they also agreed to submit the entire dispute—both the liability and remedies questions—to arbitration. . . . There is nothing unjust about a decision to withhold review until the arbitrator has completed both segments of the whole task that was given to him."). The Court should decline to review the interlocutory Award under the complete arbitration rule. Instead, the Court should order the Company to complete the arbitration process that it agreed to in the parties' CBA.

**B.**     **If the Court decides to review the liability decision, it should be confirmed.**

If the Court disagrees with Local 111's first issue and decides to review the liability decision despite the lack of finality, the Court should uphold the interlocutory decision. "Judicial review of arbitration awards is severely limited." *Manville Forest Prods. Corp. v. United*

11

*Paperworkers Int'l Union*, 831 F.2d 72, 74 (5th Cir. 1987). "The standard for this review is 'among the narrowest known to the law.'" *Cont'l Airlines v. Air Line Pilots Ass'n, Int'l*, 555 F.3d 399, 405 (5th Cir. 2009) (quoting *E. Air Lines, Inc. v. Transp. Workers Union, Local 533*, 580 F.2d 169, 172 (5th Cir. 1978)). When an arbitration award settles a labor dispute, judicial review is "particularly constrained." *Teamsters Local No. 5 v. Formosa Plastics Corp.*, 363 F.3d 368, 371 (5th Cir. 2004). "The reasons for insulating arbitral decisions from judicial review are grounded in the federal statutes regulating labor-management relations," which "reflect a decided preference for private settlement of labor disputes without the intervention of government." *United Paperworkers Int'l Union v. Misco*, 484 U.S. at 37.

Under this unusually deferential standard of review, "courts are not authorized to reconsider the merits of an award." *Misco*, 484 U.S. at 36. "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (quoting *E. Assoc. Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)). Instead of assessing how well the arbitrator interpreted the contract, a reviewing court asks whether the arbitrator acted within the contract's bounds. *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." *Id.*

To determine whether an arbitrator has overstepped his authority, "courts apply the 'essence test,' evaluating whether the arbitration award 'ha[s] a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement.'" *Commc'ns Workers v. Sw. Bell Tel. Co.*, 953 F.3d 822, 826–27 (5th Cir. 2020)

(quoting *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1325 (5th Cir. 1994)). It is only when "an arbitrator is no longer applying or interpreting the agreement but rewriting it" that a reviewing court may vacate the award. *Delek Refin., Ltd. v. Local 202, United Steel*, 891 F.3d 566, 570 (5th Cir. 2018). "Where 'there is ambiguity as to whether an arbitrator is acting within the scope of his authority,'" however, "'that ambiguity must be resolved in favor of the arbitrator.'" *Quezada v. Bechtel OG & C Const. Servs. Inc.*, 946 F.3d 837, 844 (5th Cir. 2020).

In this case, the Company urges that Arbitrator Green "ignore[d] Article 19's language" in finding that "a Monday to Friday work schedule was a 'non-consecutive day work schedule' because the two consecutive days off spanned two weekly schedules, rather than one." *Complaint*, ¶¶23, 26. The Company argues that because the employees "received two consecutive days off — Saturday and Sunday"—Arbitrator Green was constrained by the plain language of the CBA to rule that the Company need not pay earned work credits to the employees who were so scheduled. *Complaint*, ¶24. There are two main reasons that the Company's claim should be rejected as a matter of law.

First, although the Company attempts to package its challenge as one that the Arbitrator ignored or contradicted the language of the CBA, the substance of its complaint is that the Arbitrator got it wrong in interpreting the contract's language. A review of the decision makes clear that the Arbitrator stayed within the bounds of the language of the Agreement. The Arbitrator began by identifying the key provision to be analyzed: "In order to resolve this dispute, the Arbitrator must interpret the meaning of 'assigned to work a schedule' in Article 19.1.B of the Agreement." *Decision,* Union Appx. at 8-9. The Arbitrator then reviewed the evidence and arguments presented by the parties bearing on that provision, including the Company's argument,

13

repeated in this court challenge, that the earned work credit should be determined by looking over a two-week schedule rather than the one-week schedule actually used by the parties:

> There was nothing in the record to suggest that employees receive an assigned work schedule over a two-week time frame or any other time frame than from Sunday to Saturday when posted on Fridays. It is understood that a key purpose of the Sunday to Saturday schedule is for purposes of establishing the workweek to make overtime calculations as required by wage and hour law. But there was nothing in the record to show that employees are "assigned to work a schedule" in any other way than by a Sunday to Saturday schedule. The Company even admitted that if it wants to do so, it can "create schedules where no [earned work credits] are paid out at all." (Tr. 95). Unfortunately, there is no evidence in the record that the Company actually did create a schedule to assign the work other than from Sunday to Saturday in a single workweek at a time.

*Decision,* Union Appx. at 9. The Arbitrator summarized his resulting conclusion, "Because the record is clear that the only way employees were 'assigned to work a schedule' is by the posting that occurs on Friday that schedules employees from the next Sunday to Saturday, I find that is the schedule that must be considered in determining earned work credit." *Id*.

In stating his interpretation of the CBA language based on the arbitration hearing evidence another way, the Arbitrator wrote:

> I must reiterate that no other specific method for describing how employees were "assigned to work a schedule" is present from the facts in the record. Nor does the Agreement suggest that the "assigned to a work schedule" language allows the Company to look at two separately assigned work schedules and join them to determine whether an earned work credit should be assigned. The language says "a work schedule" not "work schedules." As a result, I find that the Union has met its burden to establish that the Company violated the Agreement. The Company decided to analyze Article 19 by looking over two separately assigned weeks of work schedules to determine earned work credits. In looking at two assigned work schedules to determine that an employee had two consecutive days, a Saturday and Sunday, as a reason to not provide earned work credit, the Company is not looking at "a schedule." Instead, it is looking at a Saturday and Sunday as days off occurring consecutively but can only determine that by looking at two separately assigned schedules. This approach demonstrates that the Company violated the clear terms of Article 19.

*Decision,* Union Appx. at 10.

As the Court can see, Arbitrator Green interpreted the word "schedule"—as used in the CBA language providing for earned work credits for "[a]ny employee who is assigned to work a **schedule** that does not provide for two (2) consecutive days off"—to mean the one-week period designated by the Company, beginning on Sunday and ending on Saturday, for which the Company posts the days and times when its employees are required to work each week. CBA, Union Appx. at 46-47. The Company plainly disagrees with this interpretation of the word "schedule." The Court may disagree with Arbitrator Green's interpretation of the word "schedule" as well. However, such a disagreement provides no basis to set aside the award if the Arbitrator was "even arguably construing or applying the contract." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (quoting *E. Assoc. Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)). Arbitrator Green was construing and applying the contract language granting earned work credits for each "schedule" without consecutive days off. The Company's claim must be dismissed for that reason.

Second, even if the Court were permitted to review the quality of the Arbitrator's contract interpretation analysis, Arbitrator Green has the better of the debate because his interpretation tracks the plain language of the CBA while the Company's interpretation does not. The Company's complaint is that Arbitrator Green interpreted the phrase "non-consecutive day work schedule" to be limited to a single schedule rather than "two weekly schedules" as the Company urged.[5] *Complaint*, ¶23. One of those interpretations conflicts with the CBA's plain language, but it is not that of the Arbitrator. *Cf. Delta Queen Steamboat Company v. District 2 Marine Engineers Beneficial Association,* 889 F.2d 599 (5th Cir. 1989)(arbitration award vacated due to arbitrator's reinstatement of terminated pilot even though he found pilot to have committed gross carelessness; labor contract explicitly provided that carelessness constituted proper cause for discharge).

---

[5] The Company has trouble even keeping its interpretive story straight, as it concedes that earned work credits are earned one week at a time. *Complaint*, ¶22.

15

The Company's implicit contractual interpretation argument appears to be that the Arbitrator should have found that the word "schedule" in the CBA's EWC provision means a one-week period beginning on Monday and ending on Sunday — even though the Company chooses to schedule its employees for one-week periods beginning on Sunday and ending on Saturday — despite the complete lack of evidence that this is what the CBA says, has ever been the practice between the parties, or is what the parties intended. The Company's argument is divorced from the language of the agreement, unlike the Arbitrator's analysis outlined above.

The Company claims that the Arbitrator stepped outside the contract to impose his own "personal sense of industrial justice," but its real argument in this case is that following the plain language of the contract results in "a windfall of EWC to employees," whom the Company believes should be grateful to have Saturdays and Sundays off. *Complaint*, ¶¶16, 24, 26. Of course, **that** argument is solely an "industrial justice" argument that has nothing to do with the CBA language that the Company violated.

In sum, even if the Court were conducting a *de novo* review, the liability decision should be upheld. However, as set out above, the Court is limited to reviewing whether Arbitrator Green was arguably construing or applying the CBA. Because the record makes quite clear that he was, the Company's claim must be dismissed. If the Court decides to review the liability decision, it should be upheld.

## IV.   ATTORNEYS' FEES

The Union seeks its reasonable attorneys' fees in litigating this action, including but not limited to the fees incurred even if this Court were to dismiss the Company's lawsuit as premature and improper because it was filed prior to the Arbitrator's final decision. The Fifth Circuit has held that "[f]or the same reason that judicial review of arbitration awards is limited, a party may be

awarded attorneys' fees if it has to fight back a court challenge to the award it obtained in the parties' chosen forum." *Delek Refin.,* 891 F. 3d at 573. "This sanction is necessary lest federal labor policy be frustrated by judicial condonation of dilatory tactics that lead to wasteful and unnecessary litigation." *Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tex. Steel Co.*, 639 F.2d 279, 283 (5th Cir. 1997). Fees are appropriate when a challenge to an arbitrator's decision is "without justification." *Bruce Hardwood Floors v. UBC, S. Council of Indus. Workers, Local Union No. 2713*, 103 F.3d 449, 453 (5th Cir. 1997).

Local 111 recognizes that "without justification" refers to the type of challenge rather than the strength of the challenge, with challenges to an arbitrator's jurisdiction not typically resulting in fee awards as opposed to challenges to the "intrinsic merits" of a dispute. *Delek*, 891 F.3d at 573-74. As discussed above, while the Company has attempted to frame its objections to the Decision as stemming from arbitral overreach, it is plain that it just believes that the Arbitrator acted erroneously in rejecting its interpretation of the contract. "[W]hen parties have agreed to arbitrate a dispute, a subsequent court challenge to the merits is not justified even when that question is close because going to court is at odds with the parties' agreement to be bound by the arbitrator's decision." *Id.* In *Delek*, the court held that an arbitrator's interpretation of a contract is a merits inquiry and awarded attorneys' fees; the court looked beyond the party's characterization of its challenge. *See also Tex. Steel Co.*, 639 F.2d at 283-84 (holding that a challenge to an arbitrator's contract interpretation warranted fees).

## V. CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Local 111 requests that its motion be granted and this case be dismissed and remanded to Arbitrator Green for determination of the remedy under the complete arbitration rule. Alternatively, if the Court determines the merits of the Company's challenge, Local 111 requests that the Arbitrator's decision be upheld and that the case be remanded to

17

Arbitrator Green for determination of the remedy. Local 111 requests that the Company's cross-motion for summary judgment be denied in all respects. Finally, Local 111 requests that it be awarded its reasonable attorney's fees and for all other relief to which the Court may find it entitled.

        Respectfully submitted,

        DEATS, DURST & OWEN P.L.L.C.
        707 WEST 34TH STREET, SUITE 3
        AUSTIN, TEXAS 78705
        Telephone: (512) 474-6200
        Facsimile: (512) 474-7896

        /s/ Martha P. Owen
        Martha P. Owen
        State Bar No. 15369800

        Rod Tanner
        State Bar No. 19637500
        rtanner@rodtannerlaw.com
        TANNER AND ASSOCIATES, PC
        6300 Ridglea Place, Suite 407
        Fort Worth, Texas 76116-5706
        Telephone: (817) 377-8833
        Facsimile:   (817) 377-1136

        **ATTORNEYS FOR DEFENDANT**
        **BAKERY, CONFECTIONARY, TOBACCO**
        **WORKERS AND GRAIN MILLERS**
        **INTERNATIONAL UNION, LOCAL 111**

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document has been forwarded to counsel of record indicated below via e-service on this the 25th day of February, 2022, to wit:

David R. Broderdorf
david.broderdorf@morganlewis.com
Richard J. Marks
rick.marks@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Lauren A. West
lauren.west@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, TX 75201-7347

                                          */s/ Martha P. Owen*_____
                                          Martha P. Owen