**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| BIMBO BAKERIES USA, INC.,<br><br>      Plaintiff,<br><br>  v.<br><br>BAKERY, CONFECTIONERY, TOBACCO WORKERS AND GRAIN MILLERS INTERNATIONAL UNION, LOCAL 111,<br><br>      Defendant. | Civil Action No. 4:21-CV-01079-P |

**PLAINTIFF BIMBO BAKERIES USA, INC.'S**
**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

David R. Broderdorf
Washington DC Bar No.: 984847
Virginia State Bar No.: 76538
Richard J. Marks (*Admitted Pro Hac Vice*)
Washington DC Bar No.: 1672161
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-5817
Facsimile: (202) 739-3001
david.broderdorf@morganlewis.com
rick.marks@morganlewis.com

Lauren A. West (Texas Bar No. 24070831)
**MORGAN, LEWIS & BOCKIUS LLP**
1717 Main Street, Suite 3200
Dallas, Texas 75201
Telephone: (214) 466-4000
Fax: (214) 466-4001
lauren.west@morganlewis.com

**ATTORNEYS FOR PLAINTIFF**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................... 1
II. STATEMENT OF MATERIAL FACTS ................................................................. 2
    A. The Parties and Collective Bargaining Agreement.................................. 2
    B. Earned Work Credit Benefit Negotiated Under the CBA........................ 3
    C. The Union's Grievance and Arbitration Award....................................... 4
III. ARGUMENT............................................................................................................ 5
    A. Summary Judgment Standard. .................................................................. 5
    B. Legal Standard for Review of Labor Arbitration Awards. .................... 6
    C. BBU Is Entitled to Summary Judgment Because Arbitrator Green Exceeded His Authority Under the CBA and Impermissibly Dispensed His Own Brand of Industrial Justice In Granting Employees the Right to EWCs When They Received Two Consecutive Days Off.................................... 8
        1. The CBA Contains Unambiguous Language on When the EWC Applies Based on the Consecutive Versus Non-Consecutive Days Off Distinction. ........................................................................... 8
        2. Arbitrator Green Voided Unambiguous Contract Language With His "Interpretation" that Consecutive Days Off Were Somehow "Non-Consecutive" Because Each Payroll Week Starts on Sunday and Ends on Saturday................................................................... 9
        3. Arbitrator Green Exceeded His Contractual Authority By Impermissibly Basing the Award, Even in Part, on the Perceived Loss of Income to Employees................................................................ 12
IV. CONCLUSION...................................................................................................... 14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................5

*Anheuser-Busch, Inc. v. Int'l Bhd. of Teamsters, Local 744*,
    280 F.3d 1133 (7th Cir. 2002) ................................................................7, 8, 13, 14

*Beaird Indus., Inc. v. Local 2297, Int'l Union*,
    404 F.3d 942 (5th Cir. 2005) ...................................................................7, 11, 12, 14

*Bhd. of Locomotive Eng'rs v. Union Pac. R.R. Co.*,
    719 F.3d 801 (7th Cir. 2013) ...................................................................................7

*Chi. Typographical Union No. 16 v. Chi. Sun-Times, Inc.*,
    935 F.2d 1501 (7th Cir. 1991) .................................................................................7

*Citgo Asphalt Refining Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l
    Union Loc. No. 2-991*,
    385 F.3d 809 (3d Cir. 2004) .................................................................................13

*Harvill v. Westward Commc'ns, L.L.C.*,
    433 F.3d 428 (5th Cir. 2005) ..................................................................................5

*Houston Lighting & Power Co. v. Int'l Broth. of Elec. Workers, Local Union No.
    66*,
    71 F.3d 179 (5th Cir. 1995) ..................................................................................10

*M&G Polymers USA, LLC v. Tackett*,
    574 U.S. 427 (2015) ................................................................................................8

*Major League Baseball Players Ass'n v. Garvey*,
    532 U.S. 504 (2001) ................................................................................................6

*NIPSCO v. United Steelworkers of Am.*,
    243 F.3d 345, 347 (7th Cir. 2001) ..........................................................................8

*PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*,
    19 F.4th 308 (3d Cir. 2021) ....................................................................................8

*Phillips 66 Co. v. Int'l Union of Op. Eng'rs Local 351*,
    494 F. Supp. 3d 395 (N.D. Tex. 2020) ........................................................7, 12, 13

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Rayborn v. Bossier Par. Sch. Bd.*,
   881 F.3d 409 (5th Cir. 2018) ..................................................................................................6

*Rock-Tenn Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union*,
   108 Fed. App'x 905 (5th Cir. 2004) ...............................................................................7, 9, 12

*Salazar-Limon v. City of Houston*,
   826 F.3d 272 (5th Cir. 2016) ..................................................................................................6

*Unite Here Local 1 v. Hyatt Corp.*,
   862 F.3d 588 (7th Cir. 2017) ..................................................................................................8

*United Paperworkers Int'l Union v. Misco, Inc.*,
   484 U.S. 29 (1987).........................................................................................................6, 9, 11

*United Steel Workers of Am. v. Enter. Wheel & Car Corp.*,
   363 U.S. 593 (1960)...........................................................................................6, 8, 12, 14

**Statutes**

29 U.S.C. § 185..................................................................................................................2, 8, 14

**Other Authorities**

Fed. R. Civ. P. 56...................................................................................................................1

Fed. R. Civ. P. 56(a) ..............................................................................................................5

Local Rule 56.5......................................................................................................................1

In accordance with Rule 56 of the Federal Rules of Civil Procedure, and Northern District of Texas Local Rule 56.5, Plaintiff Bimbo Bakeries USA, Inc. ("BBU" or the "Company") files this Brief in Support of Plaintiff's Motion for Summary Judgment asking the Court to grant summary judgment in favor of the Company, and, in support, states as follows:

## I.     INTRODUCTION

This case involves an arbitration Opinion and Award ("Award") that exceeded all contractual authority and violated fundamental principles of contract law—that arbitrators cannot rewrite a parties' agreement and parties should be able to enjoy the benefits of their bargain. BBU and Bakery, Confectionery, Tobacco Workers and Grain Millers International Union, Local 111 ("Local 111" or the "Union") are parties to a collective bargaining agreement ("CBA") that covers certain employees working in BBU's bakery in Fort Worth, Texas. The parties' CBA includes a provision requiring BBU to either give employees two consecutive days off *OR* credit employees a specific monetary amount (known as an "Earned Work Credit" or "EWC"), to be paid at the end of each year. These are mutually exclusive outcomes; an employee either receives two consecutive days off from work or the EWC. The parties' CBA also prohibits an arbitrator from adding to, subtracting from, or modifying the agreement.

Historically, most bargaining unit employees did not receive two consecutive days off, resulting in BBU regularly paying employees EWCs. In 2019, BBU modified its schedules to give many bargaining unit employees consecutive days off. Employees began working Monday to Friday and receiving Saturday and Sunday off, which reduced EWCs for bargaining unit employees. Yet the Union filed and pursued a grievance to arbitration seeking EWCs for weeks in which employees received two consecutive days off—an untenable position under the CBA's plain language.

1

On August 11, 2021, Arbitrator Michael Z. Green issued the Award, holding that despite employees working five consecutive days (Monday through Friday), and despite them receiving two consecutive days off (Saturday and Sunday), the CBA somehow entitled employees to both this schedule *AND* the EWC.  To reach this conclusion, Arbitrator Green both ignored the unambiguous language in the parties' CBA and imposed his own sense of "industrial justice." These impermissible actions exceeded Arbitrator Green's contractual authority, requiring that this Court vacate the Award based on the limits imposed on labor arbitrators when resolving CBA disputes under Section 301 of the Labor Management Relations Act ("LMRA").  29 U.S.C. § 185.

## II.     STATEMENT OF MATERIAL FACTS

### A.     The Parties and Collective Bargaining Agreement

BBU operates a bakery in Fort Worth, Texas (the "Fort Worth bakery") as part of its nationwide manufacture, sale, and distribution of baked goods.  *See* Appendix Exhibit A at App. 003.  The Fort Worth bakery makes various brands of baked goods, including Orowheat bread, Mrs. Baird's, hot dog and hamburger buns, and Mrs. Baird's and Entenmann's labeled doughnuts.  *See id.*

Local 111 is a labor organization and the exclusive collective bargaining representative for a bargaining unit of employees in the production, maintenance, sanitation, and shipping/receiving departments at the Fort Worth bakery—totaling approximately 232 employees.  *Id. See also* Appendix Exhibit B at App. 018.  The production and shipping departments at the Fort Worth bakery operate six days per week, while the maintenance and sanitation departments run seven days per week.  *See* Appendix Exhibit A at App. 003.

Local 111 and BBU are parties to the CBA, effective from February 4, 2018 through February 4, 2023, covering employees at the Fort Worth bakery.  *See generally* Appendix

2

Exhibit B.  The CBA contains grievance and arbitration provisions, but the CBA's arbitration provision, Article 6, expressly restricts the authority of an arbitrator as follows: "The arbitrator shall have no power to add to or subtract from or modify any of the terms of this Agreement." *Id*. at App. 023-24.

### B. <u>Earned Work Credit Benefit Negotiated Under the CBA</u>

The parties have agreed, and memorialized in successive collective bargaining agreements since 1998, that employees who do not receive consecutive days off are entitled to additional compensation due to the personal and scheduling limitations imposed by having days off separated from each other.  *See* Appendix Exhibit A at App. 002; Exhibit B at App. 046. Article 19.1 of the CBA, entitled "Earned Work Credit," provides that:

> "A.    Any employee who is assigned to work a schedule that *does not provide for two (2) consecutive days off* shall be credited with twelve (12) earned work credits *for each Saturday/Sunday worked under any such non-consecutive day work schedule*.
>
> B.    Moreover, it is the intention of this Agreement that the Company shall either establish work schedules, *which provide for consecutive days off or pay the earned work credit*.  Accordingly, when an employee is assigned to work a schedule, which provides for Saturday/Sunday off *but does not provide for two (2) consecutive days off, such employee shall also be credited with twelve (12) earned work credits for each such non-consecutive day work schedule*." (emphases added)."  Appendix Exhibit B at App. 046-47.

Each EWC under Article 19 has a value of $1.00, with the prior 12 months' EWC paid out annually to each eligible employee in December.  *Id*. at App. 047.  Before 2019, employees at the Fort Worth bakery regularly worked on Saturday and/or Sunday and rarely had two consecutive days off.  *See* Appendix Exhibit A at App. 003.  BBU, therefore, commonly paid production employees EWCs for the weeks without two consecutive days off—totaling $65,000 in 2018.  *See id*.

3

In late 2018, the Company notified the Union of its plan to change the Fort Worth bakery production employees' schedules to a Monday through Friday schedule, meaning employees would begin receiving two consecutive days off—Saturdays and Sundays. *See id.* at App. 004. The parties did not bargain over the schedule change, and the Union never opposed the Company's right to make this schedule change under the CBA. *See id.* at App. 003. The Company decided to implement the schedule change to provide schedules with better balance for its employees and to serve as an attractive recruitment and retention tool. *See id.* at App. 003-004. The schedule change was not limited Forth Worth bakery employees. *See id.* at App. 004. The Company implemented the new schedule for approximately 1500 employees at all eight bakeries in the region, including Fort Worth, Houston, Oklahoma City, Arlington, Grand Prairie, Rockwall, San Antonio, and Meridian, Mississippi. *See id.*

In January 2019, the Company implemented the new schedule and, at the end of 2019, did not pay EWCs to employees for weeks in which they received both Saturdays and Sundays off because, of course, those employees received two consecutive days off. *See id.*

      **C.**      **The Union's Grievance and Arbitration Award**

In December 2019, the Union surprisingly filed two grievances against BBU, which were later consolidated, alleging that the Company violated Article 19, Sections 19.1, 19.2, and 19.3 of the CBA by not paying employees EWCs for weeks in which they worked Monday through Friday schedules and received both Saturday and Sunday off. *See id.* at App. 005. On April 8, 2021, the Company and the Union held an arbitration hearing over the consolidated grievance before Arbitrator Green, who issued the Award, dated August 11, 2021. *See id.* at App. 001, 015.

In the Award, Arbitrator Green repeatedly conceded that, beginning in 2019, employees at the Fort Worth bakery received Saturday and Sunday—or two consecutive days—off. *See id.*

4

at App. 003-04, 09.  Despite this, Arbitrator Green *sustained* the Union's grievance, finding that employees were entitled to EWCs for weeks in which they worked Monday to Friday and received Saturday and Sunday off, despite the CBA language to the contrary.  *See id.* at App. 013.  He purportedly justified the Award by citing BBU's payroll week that runs from Sunday to Saturday, such that the "two consecutive days" off under Article 19.1 must occur within the same payroll week in order to avoid EWC payments.  *See id.* at App. 003, 10.

Arbitrator Green also explained that the adverse impact on bargaining unit employees from losing the additional EWC cash payments supported his Award.  *See id.*  He reasoned that to deny the EWC to employees "leads to a harsh result of more than $20,000 less for bargaining unit employees."  *Id.*  Further, Arbitrator Green noted that "there is no debate that the [schedule] change did result in some cost savings for the Company and loss of income for the employees in terms of the amount of annual [EWCs]."  *Id*. at App. 004.

### III.     ARGUMENT

#### A.     Summary Judgment Standard.

Federal Rule of Civil Procedure 56(a) provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  This burden is met when no evidence supporting one or more essential elements of the nonmoving party's claim exists, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 323.

"If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial."  *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 433 (5th Cir. 2005) (internal quotation marks and citation omitted).  In reviewing

5

the record, a court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movants favor. *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 414 (5th Cir. 2018). However, "[the non-movant's] burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (internal quotation marks and citations omitted).

Here, the record consists of the CBA and Arbitrator Green's Award. *See* Appendix, Exhibits A-B. Because the factual record is fully developed without dispute, the only issue before the Court is whether the Award should be vacated or enforced through dispositive motions filed by BBU and Local 111.

### B.   Legal Standard for Review of Labor Arbitration Awards.

Although a labor arbitrator's award is granted substantial deference, it is well established that a federal court should only uphold an award if it "draws its essence from the collective bargaining agreement." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001); *United Steel Workers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). The legal boundaries on the arbitrator's authority are ultimately premised on the notion that:

> [A]n arbitrator . . . does not sit to dispense his own brand of industrial justice . . . [H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*Enter. Wheel*, 363 U.S. at 597.

Under these well-developed rules, if an arbitrator's award cannot be reconciled with the contract's language, the award should be vacated. "The arbitrator may not ignore the plain language of the contract . . ." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). In other words, the award must align with the agreement's

6

unambiguous text. *See Beaird Indus., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 946 (5th Cir. 2005) ("It is well-established that courts may set aside awards when the arbitrator exceeds his contractual mandate by acting contrary to express contractual provisions."). The question is "whether the arbitrator's inquiry disregarded the very language of the agreement itself." *Anheuser-Busch, Inc. v. Int'l Bhd. of Teamsters, Local 744*, 280 F.3d 1133, 1137 (7th Cir. 2002).

Notions of perceived fairness and/or negative employee impact are not legitimate grounds to disregard plain contract language. *Phillips 66 Co. v. Int'l Union of Op. Eng'rs Local 351*, 494 F. Supp. 3d 395, 402 (N.D. Tex. 2020); *see also Bhd. of Locomotive Eng'rs v. Union Pac. R.R. Co.*, 719 F.3d 801, 803-04 (7th Cir. 2013) ("Arbitrators fail to interpret an agreement when they ignore the text of the agreement and instead rely on their own notions of justice…Thus the question for this court is whether the arbitrator interpreted the parties' collective bargaining agreement and reached a tenable result from the text of the agreement."). Thus, an arbitrator is not free to say "[t]he contract says X, but my view of sound policy leads me to decree Y." *Chi. Typographical Union No. 16 v. Chi. Sun-Times, Inc.*, 935 F.2d 1501, 1505 (7th Cir. 1991). Indeed, the Fifth Circuit has made clear than an arbitrator cannot "ignore [the contract's] terms to pursue his own brand of industrial justice." *Rock-Tenn Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union*, 108 Fed. App'x 905, 907 (5th Cir. 2004).

Finally, arbitrators may not purport to "interpret" the contract and then ignore its plain terms. "Simply referencing the agreement is insufficient for [the courts] to uphold the award. The Arbitrator must show that the award is rationally inferable in some logical way from the agreement." *Beaird*, 404 F.3d at 947. Arbitrators also cannot create "escape hatches" in plain

7

language, no matter what the circumstances are, nor "dress [their] policy desires up in contract interpretation clothing." *Anheuser-Busch*, 280 F.3d at 1143, 1145 (citing *NIPSCO v. United Steelworkers of Am.*, 243 F.3d 345, 347 (7th Cir. 2001)).

### C. BBU Is Entitled to Summary Judgment Because Arbitrator Green Exceeded His Authority Under the CBA and Impermissibly Dispensed His Own Brand of Industrial Justice In Granting Employees the Right to EWCs When They Received Two Consecutive Days Off.

#### 1. *The CBA Contains Unambiguous Language on When the EWC Applies Based on the Consecutive Versus Non-Consecutive Days Off Distinction.*

Under Section 301 of the LRMA, courts "interpret collective-bargaining agreements . . . according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015).[1]  In *M&G Polymers*, the Court elaborated: "In this endeavor, as with any other contract, the parties' intentions control. . . . 'Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent.'" *Id*. (quoting 11 R. Lord, *Williston on Contracts* § 30:6, p. 108 (4th ed. 2012)) (citing *Textile Workers v. Lincoln Mills of Ala.*, 353 U.S. 448, 456-57 (1957)).

Article 19.1 of the CBA unambiguously establishes that EWCs are only triggered when an employee <u>does not</u> receive two consecutive days off.  In other words, when an employee receives two consecutive days off, no EWC is owed.  Indeed, Article 19.1(B) explicitly spells out the parties' intentions concerning EWC eligibility:

---

[1] LMRA Section 301 grants federal courts the jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a). "[T]his jurisdiction is understood to include a request to enforce (or vacate) an award entered as a result of the procedure specified in a collective bargaining agreement for the arbitration of grievances." *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017) (citing *Enter. Wheel*, 363 U.S. at 595-96). *See also PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 312 n.4 (3d Cir. 2021) ("The LMRA includes a right of action under Section 301 to confirm or vacate labor arbitration awards.").

8

> [I]t is the intention of this Agreement that the Company shall either establish work schedules, *which provide for consecutive days off or pay the earned work credit*.  Appendix Exhibit B at App. 046 (emphasis added)

After establishing the parties' intent, Article 19.1(B) further states how EWCs apply only if the employee receives Saturday *OR* Sunday off, but not both, and deems such a schedule a "non-consecutive day work schedule":

> Accordingly, when an employee is assigned to work a schedule, which provides for Saturday/Sunday off *but does not provide for two (2) consecutive days off, such employee shall also be credited with twelve (12) earned work credits for each such non-consecutive day work schedule*."  *Id*. at App. 046-47 (emphases added).

Pursuant to the CBA's plain language, again, employees will only receive EWCs when they do not receive "two (2) consecutive days off."  *Id*.  Article 19.1(A) further reinforces this plain language, providing:

> Any employee who is assigned to work a schedule that *does not provide for two (2) consecutive days off* shall be credited with twelve (12) earned work credits . . . *Id*. at App. 046 (emphasis added).

Thus, this is not a case where the CBA language is ambiguous and can be "interpreted" to entitle employees to both the EWC and two consecutive days off on Saturday and Sunday.  Yet, Arbitrator Green impermissibly reached this result.

> 2. *Arbitrator Green Voided Unambiguous Contract Language With His "Interpretation" that Consecutive Days Off Were Somehow "Non-Consecutive" Because Each Payroll Week Starts on Sunday and Ends on Saturday.*

An arbitration award fails to draw its essence from the collective bargaining agreement, which warrants setting it aside, if the award "ignore[s] the plain language of the contract."  *Misco*, 484 U.S. at 38.  The Fifth Circuit has further explained this established principle, holding that "[a]rbitral action contrary to express contractual provisions will not be respected."  *Rock-Tenn*, 108 Fed. App'x at 907 (quoting *Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs*

9

*Beneficial Ass'n*, 889 F.2d 599, 604 (5th Cir. 1989)). This is because "[i]f the language of the agreement is clear and unequivocal, an arbitrator is not free to change its meaning." *Houston Lighting & Power Co. v. Int'l Broth. of Elec. Workers, Local Union No. 66*, 71 F.3d 179, 184 (5th Cir. 1995). That, however, is precisely what Arbitrator Green did when issuing the Award.

As summarized above, there was no dispute that employees received consecutive days off (Saturday and Sunday) beginning in 2019. Arbitrator Green acknowledges this repeatedly throughout the Award.

- "In January 2019, the Company started to provide Saturdays and Sundays off." Appendix Exhibit A at App. 003.

- "Although this change in starting to offer consecutive Saturdays and Sundays as days off began in January 2019." *Id*. at App. 004.

- "[T]he parties may not have contemplated when they agreed to the language in Article 19 more than a decade ago that it would be able to have production schedules allowing employees to work while having Saturdays and Sundays off consecutively." *Id*. at App. 009.

Nevertheless, Arbitrator Green bypassed the plain CBA language—in response to Local 111's brazen attempt to find some loophole to obtain EWC where none is due—because BBU uses a Sunday-to-Saturday payroll week for overtime calculations. Arbitrator Green latched onto this alleged loophole sought by the Union, yet in doing so, twisted Article 19.1 beyond all reason and recognition. For example, three employees could work different schedules, *all providing for two consecutive days off*, with the first working Monday to Friday, the second working Sunday to Thursday, and the third working Tuesday to Saturday. Under the Award, the first employee would still be eligible for EWCs, while the other two would not, based solely on the weekly payroll/overtime eligibility framework.

The CBA cannot sustain such an arbitrary distinction divorced from the plain language. Again, Article 19.1 unambiguously dictates that having "two (2) consecutive days off" is the

10

single determinative factor for EWC eligibility. This is the only viable interpretation of Article 19.1, absent rewriting or ignoring the text about receiving EWC where the employee works a Saturday *OR* Sunday, thereby *not* receiving two consecutive days off when they work the default five days each week.

Further, Arbitrator Green's rationale that the phrase "work a schedule" in Article 19.1 referred to the Sunday-to-Saturday workweek that BBU used for calculating overtime—meaning employees receiving Saturday and Sunday off were eligible for EWCs—is devoid of any support from, and in direct conflict with, the plain language. Appendix Exhibit A at App. 010. Article 19.1 contains no language requiring that the five consecutive workdays and two consecutive days off begin on any specific day of the week. Instead, Article 19.1(A) explicitly states that employees will receive EWCs "for *each Saturday/Sunday worked* under any such non-consecutive day work schedule." Appendix, Exhibit B at App. 046 (emphasis added). Not only do employees receive two consecutive days off when working a Monday through Friday schedule, they do not work either Saturday *OR* Sunday. Thus, the plain language dictates that employees working Monday through Friday do not trigger EWCs on two independent bases: (1) they receive two consecutive days off and (2) they do not work Saturday or Sunday. *See id*. Arbitrator Green's attempt to bypass this plain language through a conclusory analysis of what constitutes "work a schedule," which is unsupported by the plain language of Article 19.1, cannot stand.

"The Arbitrator must show that the award is rationally inferable in some logical way from the agreement." *Beaird*, 404 F.3d at 947. Arbitrator Green's purported rationale is not rational or logical given the plain CBA language. The Award must be vacated. *See, e.g.*, *Misco*, 484 U.S. at 38 ("[t]he arbitrator may not ignore the plain language of the contract.").

11

       3.    *Arbitrator Green Exceeded His Contractual Authority By Impermissibly Basing the Award, Even in Part, on the Perceived Loss of Income to Employees.*

Supreme Court and Fifth Circuit precedent prohibit an arbitrator from disregarding contractual language in favor of "pursu[ing] his own brand of industrial justice. *See Rock-Tenn*, 108 Fed. App'x at 907 (quoting *Enter.*, 363 U.S. at 597). Courts have found that arbitrators exceeded their contractual authority and dispensed their "own brand of industrial justice" through evaluating the adverse impact on the bargaining unit to promote "fairness." *See, e.g.*, *Beaird*, 404 F.3d at 946 (vacating award because "balance[ing] the interests of the Union with Beaird's economic savings [] can only be characterized as the Arbitrator's own brand of industrial justice."). The Award here impermissibly does this.

The Fifth Circuit's decision in *Beaird Industries, Inc. v. Local 2297, International Union*, squarely established that an arbitrator exceeds their authority when looking beyond plain contractual language to weigh the impact of the decision on bargaining unit employees. The arbitrator in *Beaird* observed that the company's decision to subcontract resulted in cost savings to the employer that did not "out-weigh the adverse impact on the CBA." 404 F.3d at 947. The Fifth Circuit, however, vacated the arbitrator's award because, in part, the arbitrator impermissibly looked beyond the contract to assess the impact of subcontracting on the bargaining unit. The court in *Beaird* specifically held that "balance[ing] the interests of the Union with Beaird's economic savings [] can only be characterized as the Arbitrator's own brand of industrial justice." *Id*. (quotations omitted).

More recently, the U.S. District Court for the Northern District of Texas similarly found that an arbitrator's weighing of the impact on employees exceeded arbitral authority and served as grounds for vacating the award. In *Phillips 66 Company v. International Union of Operating Engineers Local 351*, the arbitrator sustained the union's grievance contesting the company's

12

application of its vacation policy, concluding "it is clear that the material change in the vacation policy may have negatively affected some of the bargaining unit employees." 495 F. Supp. 3d at 389.  The court, however, vacated the award because the arbitrator exceeded his authority under the contract, holding "[i]t makes no difference whether the changes in the 2018 vacation policy had an 'adverse impact' on union employees" because the company acted consistent with contract.  *Id*. at 403.

Other federal courts of appeal, like the Fifth Circuit, have recognized this foundational principle: an arbitrator ignoring contractual language and, instead, relying on general concepts of "fairness" necessitates that the court vacate the arbitration award.  The Seventh Circuit in *Anheuser-Busch* observed that the concept of "'fairness' is as wide and as deep as the ocean and can have a multitude of meanings depending on an individual arbitrator's personal whims and caprice."  280 F.3d at 1143.  The court further noted that "reliance on the supposed 'unfairness'" directly conflicts with the requirement that an arbitrator refrain from "dress[ing] his policy desires up in contract interpretation clothing."  *Id*. (quotation omitted).  Applying these principles, and in response to the arbitrator's stated purpose of issuing the award to address "fundamentally unfair maneuvers," the Seventh Circuit vacated the award, holding "we are quite confident that [the arbitrator] was simply effectuating his personal bias regarding proper labor-management relations."  *Id*.  *See also Citgo Asphalt Refining Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Loc. No. 2-991*, 385 F.3d 809, 816, 820 (3d Cir. 2004) (vacating arbitration award because arbitrator "substitut[ed] his own judgment" for unambiguous contract language and "an arbitrator's opinion and award based on 'general considerations of fairness and equity' as opposed to the exact terms of the CBA, fails to derive its essence from the CBA.").

13

Here, Arbitrator Green unfortunately tainted the Award with his view that denying the grievance would reduce EWC compensation for employees, thus "lead[ing] to a harsh result of more than $20,000 less for bargaining unit employees." *See* Appendix Exhibit A at App. 013. Arbitrator Green further noted that "there is no debate that the [schedule] change did result in some cost savings for the Company and loss of income for the employees in terms of the amount of annual [EWCs]." *Id*. at App. 004. Consistent with established precedent in the Fifth Circuit and other circuits, Arbitrator Green's attempt to balance the perceived economic interests of BBU with the impact on bargaining unit employees, in the face of Article 19.1's unambiguous language, impermissibly dispenses "his own brand of industrial justice" rather than enforce what the parties agreed to – which is his mandate under labor law and Section 301 of the LMRA. *See Beaird*, 404 F.3d at 947; *Anheuser-Busch*, 280 F.3d at 1143; *Enter. Wheel*, 363 U.S. at 597.

## IV.   CONCLUSION

Article 19.1 unambiguously provides for EWC only when bargaining unit employees fail to receive two consecutive days off. Working Monday through Friday (consecutive days), and then receiving Saturday and Sunday off (consecutive days), simply does not entitle employees to EWC given what the parties negotiated. By providing bargaining unit employees with the right to EWC even when they receive two consecutive days off, the Award gives Local 111 a non-negotiated, windfall benefit, in direct conflict with plain CBA language. As such, Arbitrator Green exceeded his contractual authority in issuing the Award. BBU, therefore, respectfully moves for summary judgment in its favor and requests that the Award be vacated and set aside in its entirety.

Dated: February 25, 2022	Respectfully submitted,

*David R. Broderdorf*

David R. Broderdorf
Washington DC Bar No.: 984847
Virginia State Bar No.: 76538
Richard J. Marks (*Admitted Pro Hac Vice*)
Washington DC Bar No.: 1672161
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-5817
Facsimile: (202) 739-3001
david.broderdorf@morganlewis.com
rick.marks@morganlewis.com


Lauren A. West (Texas Bar No. 24070831)
**MORGAN, LEWIS & BOCKIUS LLP**
1717 Main Street, Suite 3200
Dallas, TX 75201-7347
Telephone: (214) 466-4000
Fax: (214) 466-4001
lauren.west@morganlewis.com

*Attorneys for Plaintiff Bimbo Bakeries USA, Inc.*

15

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed electronically and served on all counsel of record on this 25th day of February, 2022, via the Court's ECF/CM system.

_____
David R. Broderdorf