IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| BIMBO BAKERIES USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> BAKERY, CONFECTIONERY, TOBACCO WORKERS AND GRAIN MILLERS INTERNATIONAL UNION, LOCAL 111, <br><br> Defendant. | Civil Action No. 4:21-CV-01079-P |

**PLAINTIFF BIMBO BAKERIES USA, INC.'S REPLY
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Bimbo Bakeries USA, Inc. ("BBU" or the "Company") respectfully submits this Reply in Support of its Motion for Summary Judgment.

**I.      INTRODUCTION**

Defendant Bakery, Confectionery, Tobacco Workers and Grain Millers International Union, Local 111's (the "Union") response to BBU's motion for summary judgment raises very little that requires a direct response. There is no dispute that Section 301 of the Labor Management Relations Act gives the Court the authority to vacate the Award because the Court has jurisdiction to *enforce* collective bargaining agreements. Just like in cases involving commercial contracts, parties to labor contracts have the same right under federal labor law to enjoy the benefit of the bargain.

Here, that bargain is clear – if employees are inconvenienced by having their two days off split – *i.e.* not consecutive – they receive an additional payment for each Saturday/Sunday worked under such schedules. But where employees work five consecutive days, *and thus have two consecutive days off*, they receive no supplemental earned work credit ("EWC") payments to

their base compensation. Yet the Award, under the guise of contract interpretation, impermissibly grants employees the supplemental EWC payment even when they work five consecutive days and have two consecutive days off. The Award has impermissibly interfered with what the parties bargained for in their 2018 collective bargaining agreement ("CBA"). The Court, therefore, should grant BBU's motion for summary judgment and vacate the Award in its entirety.

## II.     ARGUMENT

### A.     Arbitrator Green's Superficial Deference to the CBA Does Not Render the Award Enforceable.

At the outset of its opposition, the Union attempts to present the Court with a simple proposition: because Arbitrator Michael Z. Green cited to the CBA in the Award, it must draw its essence from the contract. *See* ECF 25 at 3-4. This, however, mischaracterizes Fifth Circuit precedent. In fact, the Fifth Circuit in *Beaird Industries, Inc. v. Local 2297, International Union* held the opposite, stating that "[s]imply referencing the agreement is insufficient for [the courts] to uphold the award." 404 F.3d 942, 947 (5th Cir. 2005). *See also Rock-Tenn Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union*, 108 Fed. App'x 905, 907 (5th Cir. 2004) (vacating arbitration award even though arbitrator cited to collective bargaining agreement language in decision). Accordingly, Arbitrator Green's citations to the CBA fail to insulate the Award from judicial challenge.

The Union follows this faulty proposition with a conclusory argument that the Award "is clearly grounded in an interpretation of [] Article 19" because Arbitrator Green attempted to "interpret" the CBA. ECF 25 at 3. As purported support for its position, the Union cites to the Fifth Circuit's decision in *Ball Metal Beverage Container Corp. v. Loc. 129, United Automobile, Aerospace, and Agricultural Implement Workers of America*, No. 21-10755, 2022 WL 340573

(5th Cir. Feb. 4, 2022), suggesting that any interpretation of a collective bargaining agreement is enforceable.  The Union mischaracterizes the law, again.  The Fifth Circuit does not automatically approve arbitration awards so long as the arbitrator purports to "interpret" the contract.  Indeed, such blanket approval defies logic and would effectively negate the Court's authority under Section 301 to review arbitration awards that conflict with and/or ignore plain contract language.  Instead, in *Beaird* the Fifth Circuit made clear that "the Arbitrator must show that the award is rationally inferable in some logical way from the agreement."  404 F.3d at 947.  Yet, "[an] arbitrator's attempts to twist unambiguous clauses in order to make a policy-or practice-based judgment against the company's decision cannot masquerade as contract interpretation."  *PPG Indus., Inc. v. Loc. 470 Int'l Ass'n of Machinists & Aerospace Workers*, No. 2:16-CV-1302, 2018 WL 4610117, *5 (W.D. La. Aug. 30, 2018).  *See also Anheuser-Busch, Inc. v. Int'l Bhd. of Teamsters, Local 744*, 280 F.3d 1133, 1143 (7th Cir. 2002) (holding arbitrators may not "dress [their] policy desires up in contract interpretation clothing") (citation omitted).

That is precisely what Arbitrator Green did in this case, however.  Article 19.1 provides that employees will either receive "two (2) consecutive days off" or be credited with EWC "for each Saturday/Sunday worked under any such non-consecutive day work schedule."  ECF 24-2 at App. 046.  Employees undisputedly received both Saturday and Sunday off consecutively beginning in 2019, meaning they receive no EWC payments under the contract.  The Award, therefore, is not "rationally inferable in some logical way from the agreement" and must be vacated, regardless whether or not Arbitrator Green's attempted to "interpret" the CBA, or his purported good faith in doing so.  *See Beaird*, 404 F.3d at 947 (vacating arbitration award

because it conflicted with plain language of contract's subcontracting provision, even though arbitrator purported to "interpret" agreement); *PPG Indus., Inc.*, 2018 WL 4610117 at *6 (same).

  **B.**  **The Award Effectively Rewrites Article 19.**

  In its motion for summary judgment, BBU quoted Article 19 extensively, which states that BBU will "provide for consecutive days off or pay the [EWC]." ECF 24-2 at App. 046-47. Relying on the faulty proposition that any effort to "interpret" a labor agreement insulates an arbitration award from judicial scrutiny, the Union displays a chart of the circuit court precedent cited in BBU's motion for summary judgment, purportedly to distinguish those cases from the Award here. Contrary to the Union's contention, however, the chart—though cursory—further highlights the fact that Arbitrator Green violated Article 19 when permitting employees to receive both two consecutive days off and EWC. *See, e.g.*, *Rock-Tenn*, 108 Fed. App'x at 907 (vacating arbitration award because arbitrator ignored contract language giving employer unlimited right to subcontract and imposed extra-contractual restrictions on employer); *Phillips 66 Co. v. Int'l Union of Op. Eng'rs Loc. 351*, 494 F. Supp. 3d 395, 402 (N.D. Tex. 2020) (same because arbitrator ignored contract language giving employer right to change its vacation policy and imposed extra-contractual restrictions on employer).

  Following the Award, the plain language of Article 19 is no longer effective. Instead, per the Award, employees may now receive both consecutive Saturdays and Sundays off *and* EWC, provided that the consecutive days off occur in a different payroll workweek for overtime eligibility. *See generally*, *id*. at Appendix A. In other words, Arbitrator Green has effectively rewritten Article 19. That is untenable.

  Absent this Court's intervention, Article 19.1 will no longer function as written, and instead, in practice, will include the following changes noted in red font (additions) and strike-through bolded font (subtractions):

4

> A. Any employee who is assigned to work a schedule that does not provide for two (2) consecutive days off within the same Sunday-Saturday workweek, as defined by the period used for the purposes of determining overtime eligibility, shall be credited with twelve (12) earned work credits for each ~~Saturday/Sunday week~~ worked under any such non-consecutive day work schedule.
>
> B. Moreover, it is the intention of this Agreement that the Company shall either establish work schedules, which provide for consecutive days off within the same Sunday-Saturday workweek, as defined by the period used for the purposes of determining overtime eligibility, or pay the earned work credit. Accordingly, when an employee is assigned to work a schedule, which ~~provides for Saturday/Sunday off but~~ does not provide for two (2) consecutive days off within the same Sunday-Saturday workweek as defined by the period used for the purposes of determining overtime eligibility, such employee shall also be credited with twelve (12) earned work credits for each such non-consecutive day work schedule.

BBU should not have to tolerate such distortion in its executed CBA – a CBA that makes explicit that arbitrators cannot add to, subcontract from, or modify the CBA. ECF 24-2 at App. 023-24. And neither should Local 111. Even though it now favors the Award, imagine a future scenario where a CBA clause favorable to Local 111 is effectively altered by an arbitrator like Article 19 has been altered here. Local 111 would have the right to ask this Court to vacate such an award. BBU is exercising that same right to enforce the bargained-for deal.

And Fifth Circuit courts have repeatedly acknowledged a party's right to do so, and have vacated arbitration awards that alter and/or rewrite contract language. *See, e.g.*, *Phillips 66*, 494 F. Supp. 3d at 402 (vacating arbitration award that rewrote contract to add limitation on company's ability to modify vacation policy and "effectively subtracted the zipper clause from the CBA"); *STP Nuclear Operating Co. v. Int'l Bhd. of Elec. Workers Loc. Union No. 66*, No. H-05-3561, 2006 WL 1877099, *4 (S.D. Tex. July 6, 2006) (vacating arbitration award because arbitrator ignored plain language of contract and "rewrote the parties' agreement"). As such, the Award should be vacated in this case.

5

### C. There Is No Suggestion that Arbitrator Green's Implementation of His Own Brand of Industrial Justice Was "Ancillary."

The Union does not – and cannot – dispute that Arbitrator Green looked beyond the CBA and attempted to balance the perceived economic interests of BBU with the impact on bargaining unit employees. Perhaps recognizing that this squarely aligns with other examples of arbitrators employing their own "industrial justice," which courts in this circuit have deemed impermissible, the Union attempts to manufacture a loophole – suggesting, for the first time, that Arbitrator Green's impermissible implementation of his own "industrial justice" was "ancillary" to the Award. *See* ECF 25 at 5. The Union, however, offers no support, in the record or Fifth Circuit precedent, for its conclusory assertion. It concocted this explanation, seemingly out of thin air. In so doing, the Union forces the Company, and this Court, to guess about all substantive aspects of its "ancillary" argument, including, among other things: (1) what standard to apply when determining whether an element of an arbitration award is ancillary; (2) what factors are relevant to determining whether an element of an arbitration award is ancillary; (3) how to properly weigh those factors; and (4) what facts in the record here are relevant to determining whether Arbitrator Green's imposition of his own sense of "industrial justice" was ancillary. Such guesswork, however, makes for no standard of review at all, and the Court should reject the Union's *post hoc* suggestion that Arbitrator Green only engaged in ancillary discussion of "industrial justice."

Instead, *Beaird* provides the roadmap for vacating the Award here. In *Beaird*, the arbitrator ignored the plain contract language of the parties' subcontracting provision and evaluated whether "the cost savings realized from the subcontracting out-weighed the adverse impacts on the CBA." 404 F.3d at 944. The Fifth Circuit held that the plain language "should have ended the Arbitrator's inquiry" and the arbitrator's decision to move forward with

"balanc[ing] the interests of the Union with Beaird's economic savings, can only be characterized as the Arbitrator's 'own brand of industrial justice.'" *Id*. at 947. The Fifth Circuit vacated the arbitrator's award. *Id*.

The Award suffers from the same fatal infirmity. Arbitrator Green, like the arbitrator in *Beaird*, weighed the perceived interests of BBU against those of bargaining unit employees, noting "the [schedule] change did result in some cost savings for the Company and loss of income for the employees" and holding that denying the grievance would reduce EWC compensation for employees and "lead to a *harsh result* of more than $20,000 less for bargaining unit employees." *Id*. at App. 004, 13 (emphasis added). The Union argues, citing *Brotherhood of Locomotive Engineers and Trainmen v. Union Pacific Railroad Company*, 719 F.3d 801 (7th Cir. 2013), a case outside of the Fifth Circuit, that Arbitrator Green could weigh these extra-contractual interests. In *Brotherhood of Locomotive Engineers*, however, the arbitrator considered extra-contractual industry norms to determine whether the employer possessed certain "inherent" managerial rights because the contract lacked unambiguous language on the issue. *Id*. at 719 F.3d at 808. Unlike the absence of applicable contract language in *Brotherhood of Locomotive Engineers*, Article 19 sets forth the eligibility requirements for EWC – rendering extra-contractual considerations nothing more than Arbitrator Green's "own brand of industrial justice." *See Beaird*, 404 F.3d at 947. Established Fifth Circuit precedent, like precedent from other circuits, dictates that the Award must be vacated because Arbitrator Green exceeded his authority under the CBA by weighing the impact of the decision on bargaining unit employees, despite Article 19 providing that employees either receive two consecutive days off *or* EWC. *See, e.g.*, *id.*; *Phillips 66*, 495 F. Supp. 3d at 389 (vacating arbitration award and dismissing arbitrator's evaluation of "adverse impact" on bargaining unit employees because company acted

7

consistent with plain language of contract); *Anheuser-Busch*, 280 F.3d at 1143 (same and holding that arbitrator weighing "fairness" of decision, despite plain contract language, was arbitrator "simply effectuating his personal bias regarding proper labor-management relations").

### III.    CONCLUSION

For the above reasons, and as argued in its Brief in Support of its Motion for Summary Judgment, BBU respectfully requests that the Court grant its Motion for Summary Judgment and vacate the Award in its entirety, and order such further relief as this Court deems appropriate.

Dated: April 1, 2022

Respectfully submitted,

*/s/ David R. Broderdorf*

David R. Broderdorf
Washington DC Bar No.: 984847
Virginia State Bar No.: 76538
Richard J. Marks (*Admitted Pro Hac Vice*)
Washington DC Bar No.: 1672161
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-5817
Facsimile: (202) 739-3001
david.broderdorf@morganlewis.com
rick.marks@morganlewis.com


Lauren A. West (Texas Bar No. 24070831)
**MORGAN, LEWIS & BOCKIUS LLP**
1717 Main Street, Suite 3200
Dallas, TX 75201-7347
Telephone: (214) 466-4000
Fax: (214) 466-4001
lauren.west@morganlewis.com

*Attorneys for Plaintiff Bimbo Bakeries USA, Inc.*

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing was filed electronically and served on all counsel of record on this 1st day of April, 2022, via the Court's ECF/CM system.

_____
David R. Broderdorf