IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BIMBO BAKERIES USA, INC., | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:21-CV-01079-P |
| BAKERY, CONFECTIONERY, TOBACCO WORKERS AND GRAIN MILLERS INTERNATIONAL UNION, LOCAL 111, | § § § § § § | |
| Defendant. | § § | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Martha P. Owen
State Bar No. 15369800
mowen@ddollaw.com
DEATS, DURST & OWEN P.L.L.C.
707 West 34th Street, Suite 3
Austin, Texas 78705
Telephone: (512) 474-6200
Facsimile: (512) 474-7896

Rod Tanner
State Bar No. 19637500
rtanner@rodtannerlaw.com
TANNER AND ASSOCIATES, PC
6300 Ridglea Place, Suite 407
Fort Worth, Texas 76116-5706
Telephone: (817) 377-8833
Facsimile: (817) 377-1136

**ATTORNEYS FOR DEFENDANT
BAKERY, CONFECTIONARY, TOBACCO
WORKERS AND GRAIN MILLERS
INTERNATIONAL UNION, LOCAL 111**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………..…………………………………………… iii

ARGUMENT………..……………………………………………………………….. 1

    A. The Company's premature filing of this lawsuit……………………………. 1

    B. The Company's attack on the merits of the arbitration award……………… 3

    C. The Union is entitled to attorneys' fees……………………………………. 6

CONCLUSION……………………………………………………………………….. 7

CERTIFICATE OF SERVICE……………………………………………………….. 8

## TABLE OF AUTHORITIES

**Cases**

*Delek Ref., Ltd v. Local 202, United Steel, Paper and Forestry, Rubber, Mfg,*
   *Energy, Allied Industrial and Service Workers International*
   *Union,* 891 F.3d 455 (5th Cir. 2018)………………………………………….. 1, 7

*Delek Ref., Ltd v. Local 202, United Steel, Paper and Forestry, Rubber, Mfg.*
   *Energy, Allied Industrial and Service Workers International Union,*
   No. 6:15-CV-00491-RWS-KNM, 2017 WL 4479615 (E.D. Tex.
   Feb. 7, 2017)…………………………………………………………………… 2

*Executone Info. Sys., Inc. v. Davis,* 26 F.3d 1314 (5th Cir. 1994)………………………. 5

*Int'l Assoc. of Machinists & Aerospace Workers, District 776 v. Texas*
   *Steel Co.,* 639 F.2d 279 (5th Cir. 1981)…………………………………………… 6

*Millmen Loc. 550, United Bhd. of Carpenters & Joiners of Am. v. Wells*
   *Exterior Trim,* 828 F.2d 1373 (9th Cir. 1987)………………………………….. 2

*Sheedy Drayage Co. v. Teamsters Union Local 2785,* No. C-12-6204-EMC,
   2013 WL 791886 (N.C. Cal. March 4, 2013)………………………………….. 3

*Teamsters Gen. Drivers Warehouseman v. Greif Packaging,*
   No. CivA409CV2252, 2010 WL 1417889, at *7 (S.D. Tex. April 7, 2010)…… 7

*Union Switch & Signal Div. Am. Standards Inc. v. United Elec., Radio & Mach.*
   *Workers of Am., Local 610,* 900 F.2d 608 (3rd Cir. 1990)……………………… 1

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE COURT:

COMES NOW defendant Bakery, Confectionery, Tobacco Workers and Grain Millers International Union, Local 111 ("Local 111" or the "Union") and files this Reply[1] to Plaintiff's Response to Defendant's Cross-Motion for Summary Judgment.

### ARGUMENT

**A. The Company's premature filing of this lawsuit.**

Bimbo Bakeries ("the Company") is incorrect that the Union is urging this Court to determine that it lacks jurisdiction under Section 301 to review any arbitration decision that is not final.[2] Instead, both the Union and the Company agree with the court's analysis in *Union Switch & Signal Div. Am. Standards Inc. v. United Elec., Radio & Mach. Workers of Am.*, Local 610, 900 F.2d 608, 612 (3rd Cir. 1990), which held that the complete arbitration rule is a "prudential doctrin[e] restricting the **exercise** of jurisdiction." (emphasis added). In the Union's view, though, identifying the doctrine as prudential does not mean that the Court should endorse and entertain the Company's premature filing of this suit. Instead, the Union urges the Court to apply "the cardinal and salutary rule of judicial administration" that is the complete arbitration rule and remand this matter to the Arbitrator to complete the task the parties agreed to place before him. *Id.*

The Company is also incorrect in claiming that the Fifth Circuit has "implicitly rejected" the complete arbitration rule. *See* Company's Response at 2. The sole case cited by the Company is *Delek Ref., Ltd v. Local 202, United Steel, Paper and Forestry, Rubber, Mfg, Energy, Allied*

---

[1] Contemporaneously with the electronic filing of this Response, Local 111 has mailed to the clerk's office a paper copy of its Reply in compliance with Judge Pittman's rules.

[2] The Union's brief in support of its cross-motion does not make that argument; instead, the Union urges that the Court "should decline" to review the award.

1

*Industrial and Service Workers International Union*, 891 F.3d 566 (5th Cir. 2018), a curious choice since that decision does not discuss the complete arbitration rule. Neither does the district court's decision that the Fifth Circuit affirmed, which denied the employer's effort to vacate the arbitrator's award in favor of the union. *Delek Ref., Ltd v. Local 202, United Steel, Paper and Forestry, Rubber, Mfg, Energy, Allied Industrial and Service Workers International Union,* No. 6:15-CV-00491-RWS-KNM, 2017 WL 4479615 (E.D. Tex. Feb. 7, 2017).[3] It does not appear that the union made a similar challenge to the one we make here, perhaps because the case arrived in district court in a different posture than our case. In *Delek*, the arbitrator awarded relief, the parties disagreed about the scope of that relief, the parties sought clarification from the arbitrator two times but ultimately could not agree about the remedy afforded under his decision, and the company filed suit to vacate the award. Whatever the reason for the union not making this argument in *Delek*, it was not addressed by either the district court or the Fifth Circuit and it is a stretch, to say the least, to argue that that this case stands for a rejection of the complete arbitration rule.

The Union also disagrees with the Company's position that this case is one in which the parties are simply "waiting on simple math calculations" that should not delay the court's review of the Award. Company's Response at 4. While the Company cites *Millmen Loc. 550, United Bhd. of Carpenters & Joiners of Am. v. Wells Exterior Trim,* 828 F.2d 1373, 1377 (9th Cir. 1987), that decision actually supports the Union's position that the Company jumped the gun. In *Millmen*, the court **rejected** the union's effort to enforce the arbitrator's award before the arbitrator had decided the remedy, stating that "an arbitration award that postpones the determination of a remedy should not constitute a 'final and binding award' reviewable under section 301" and that such review is

---

[3] The Company incorrectly cites this as a Northern District of Texas case. Company's Response at 2.

available only in the "most extreme" cases. *Id*. at 1376, 1377 (collecting cases at 1376). *Sheedy Drayage Co. v. Teamsters Union Local 2785*, No. C-12-6204-EMC, 2013 WL 791886 (N.D. Cal. March 4, 2013), is distinguishable because there, the arbitrator awarded reinstatement and backpay "from a date six months after his termination until he is reinstated or waives reinstatement." *Id.* at 2013 WL 791886 at *6. Here, in contrast, because the parties had explicitly agreed to bifurcate liability and damages[4] – an agreement that the Company clearly violated by filing this lawsuit -- Arbitrator Green did not reach the issue of remedy at all. Decision, Union Appx. at 2, n.2, 13-14.[5]

### B. The Company's attack on the merits of the arbitration award.

The Union believes that the Court is familiar now with the Union's position vis-à-vis the Company's attack on the intrinsic merits of the Arbitrator's award and the Union will not reiterate the analysis made in its prior briefing. However, the Union will reply briefly to the Company's response.

First, the Union does not cede the plain language "high ground" to the Company. Article 19.1.B plainly states that if an employee is "assigned to **work a schedule**, which provides for Saturday/Sunday off but does not provide for two (2) consecutive days off," such employee will receive EWC. CBA, Union Appx. B at 47 (emphasis added). By the clear and unambiguous agreement of the parties, then, the entitlement to premium pay is explicitly tied to the employee's work schedule. Further, the facts regarding the work schedules of employees at the Bimbo plant were **undisputed**. For example, the Arbitrator cites these facts from the transcript: bargaining unit employees are scheduled to work 40 hours a week on a seven-day schedule; the Company posts its work schedules by Friday to set the schedule for the following workweek that starts on Sunday

---

[4] In its Response, the Company does not take issue with the Union's evidence about this agreement. *See* Union's Cross-Motion for Summary Judgment, Factual Background ¶¶ 7-10.
[5] Additionally, it should be noted that this case is distinguishable from *Sheedy Drayage* because it involves damages owing to a large number of workers in the bargaining unit over multiple pay periods, not just a single individual.

and ends on Saturday; the Company determines overtime pay based on the same Sunday through Saturday work schedule,[6] and any work performed by an employee encompassing consecutive workdays of Saturday and then Sunday will fall under two separately scheduled and assigned workweeks. Decision, Union Appx. A at 3. As the Arbitrator states, "…**there is no evidence in the record that the Company actually did create a schedule to assign the work other than from Sunday to Saturday in a single workweek at a time.**" *Id.* at 9 (emphasis added).[7] Further, as explained by the Arbitrator, "…the Company **agreed** that the only way to look at assigned work to conclude an employee did work consecutive days on Saturday and Sunday to not be entitled to earned work credit would involve looking at two separate work schedules **not** 'a schedule' of assigned work." *Id*. at 5 (emphasis added). Thus, while the Company insists that the Arbitrator went outside the CBA to determine that the work schedule that employees are assigned to work is a seven-day schedule that begins on Sunday and ends on Saturday, the opposite is true: he applied the plain language of the CBA and the undisputed testimony of witnesses to arrive at this conclusion.

Second, the Company complains about how, under the Arbitrator's construction, there is only one derivation of a schedule that will trigger the payment of EWC. Company's Response at 6. To give some context, keep in mind that while the CBA provides that employees shall be

---

[6] The Company conveniently ignores the other undisputed evidence about the schedules employees work and mentions only the overtime provision, presumably in an effort to suggest that the Arbitrator improperly imported a seven-day schedule only used for overtime calculation purposes into a more general use schedule. This suggestion is erroneous.

[7] There are other provisions in the CBA addressing the work schedule assigned to employees. For example, Article 13.5, Schedules, states that schedules are "posted in advance for **the following week**," that no employee will be scheduled to work more than five (5) days in a **workweek** except under special circumstances, and that if an employee works **seven (7) days in the workweek**, the employee will receive double-time for hours worked on the **seventh day**. CBA, Union Appx. B at 36. All these provisions make clear that employees are scheduled to work seven-day schedule that begins on Sunday and ends on Saturday. Perhaps the Arbitrator would have discussed these provisions if through its testimony at the arbitration hearing, the Company would have disputed that employees work the seven-day schedule described by the Arbitrator.

scheduled to work five days per week, those five days "need not be consecutive." CBA, Union Appx. B at 37. If an employee were assigned to work a schedule that provides for non-consecutive days off within the established workweek, such as Sunday and Thursday, for example, the employee would be entitled to EWC. Thus, as Article 19.1.B states, "…[I]t is the intention of this Agreement that the Company shall either establish work schedules, which provide for consecutive days off or pay the earned work credit." *Id.* at 47. It is true that the Company can easily avoid the payment of EWC by constructing multiple variations of a consecutive day schedule within the designated seven-day schedule, as it had in the many years prior to the schedule change that the Company unilaterally implemented without negotiating with the Union. Decision, Union Appx. A at 9 ("The Company even admitted that if it wants to do so, it can 'create schedules where no [earned work credits] are paid out at all.'"). This is to the Company's advantage if it wants to avoid paying EWC but it does not establish that the Arbitrator strayed outside the CBA.

Third, the Company's response reinforces the Union's argument that the Company, having failed to convince the Arbitrator about its interpretation of the CBA, really just wants a do-over. To this point, the Company's briefing is essentially a rehash of the arguments that the Company made at the arbitration, a fact that can be confirmed by comparing the Arbitrator's thorough discussion of the Company's position with the arguments outlined in the Company's briefing. The Company complains that the Arbitrator's efforts to interpret the CBA are "frankly, not good enough" and asks the Court to step in and make its desired correction, which is for "the Court to fill to restore (sic) the bargained for language" of no EWC being due if an employee is scheduled off on Saturday and Sunday. Company's Response at 6, 7. The Company's position is simply not consistent with the exceedingly narrow grounds for appealing an arbitration award. As the Fifth Circuit stated in *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1325 (5th Cir. 1994): "[T]his

Court does not review the language used by, or the reasoning of, the arbitrators in determining whether their award draws its essence from the contract. This Court looks only to the result reached. The single question is whether the award, however arrived at, is rationally inferable from the contract." The Court also approved of another formulation: "Phrased another way, the question is whether the arbitrator's award "was so unfounded in reason and fact, so unconnected with the wording and purpose of the collective bargaining agreement as to 'manifest an infidelity to the obligation of an arbitrator.'" *Id.* (internal citations omitted). It is clearly rationally inferable that the Arbitrator could conclude that under this CBA, an employee is entitled to receive EWC if her days off span two separate work schedules.

## C. The Union is entitled to attorneys' fees.

The Union respectfully urges the Court to use its discretion to award attorney's fees. The Fifth Circuit has stated: "[W]e refuse to countenance frivolous and wasteful judicial challenges to conscientious and fair arbitration decisions." *Int'l Assoc. of Machinists & Aerospace Workers, District 776 v. Texas Steel Co.*, 639 F.2d 279, 283-84 (5th Cir. 1981)(Fifth Circuit finding district court abused its discretion in not awarding attorney's fees). The Company received a result that it did not like but has refused to live with it, despite the Arbitrator's careful and thoughtful analysis of the CBA and relevant evidence. To make matters worse, the Company broke its agreement with the Union to bifurcate the proceedings and determine damages either by agreement or by allowing the same arbitrator to make a ruling. Its challenge, while ostensibly about the Arbitrator's violation of his jurisdiction, is an effort to get this Court to provide a different, better-for-the-Company, interpretation of the agreement. "[T]he mere assertion that the grounds for a party's refusal to abide by the award concerned the arbitrator's power to make the award does not compel the conclusion that the party's decision must have been justified." *Id.* at 283. Recognizing that practically "any

contention could be so characterized," the Fifth Circuit directed lower courts to "look to the realities of the situation." *Id.* If the Court looks to the realities of this situation, the Union believes that it has shown its entitlement to fees. *See, e.g., Delek*, 891 F.3d at 573 (upholding district court's award of fees); *Teamsters Gen. Drivers Warehouseman v. Greif Packaging*, No. CivA409CV2252, 2010 WL 1417889, at *7 (S.D. Tex. April 7, 2010)(awarding fees).

## CONCLUSION

In conclusion, for the foregoing reasons, Union 111 requests that the Court grant its Motion for Summary Judgment and award the relief requested in its motion and deny the Company's motion.

Respectfully submitted,

DEATS, DURST & OWEN P.L.L.C.
707 WEST 34TH STREET, SUITE 3
AUSTIN, TEXAS 78705
Telephone: (512) 474-6200
Facsimile: (512) 474-7896


 /s/ Martha P. Owen
Martha P. Owen
State Bar No. 15369800

Rod Tanner
State Bar No. 19637500
rtanner@rodtannerlaw.com
TANNER AND ASSOCIATES, PC
6300 Ridglea Place, Suite 407
Fort Worth, Texas 76116-5706
Telephone: (817) 377-8833
Facsimile:   (817) 377-1136

**ATTORNEYS FOR DEFENDANT
BAKERY, CONFECTIONARY, TOBACCO
WORKERS AND GRAIN MILLERS
INTERNATIONAL UNION, LOCAL 111**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document has been forwarded to counsel of record indicated below via e-service on this the 1st day of April, 2022, to wit:

David R. Broderdorf
david.broderdorf@morganlewis.com
Richard J. Marks
rick.marks@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004

Lauren A. West
lauren.west@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, TX 75201-7347

                                        */s/ Martha P. Owen*_____
                                        Martha P. Owen